1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                      * * *

9   DAVID A. ROSENBERG, Chapter 7          Case No. 2:12-cv-00627-MMD-RJJ
    Trustee,

10
                                           ORDER
                       Plaintiff,
11        v.                               (Defs.' Motion for Withdrawal of the
                                           Reference with Regard to Adversary
12  HARVEY A. BOOKSTEIN, Accountancy       Proceeding – dkt. no. 1)
    Corporation, et. al.,
13
                       Defendants.
14

15          Before the Court is a case of first impression for this District.  Defendants Harvey

16  A. Bookstein, a California Accountancy Corporation, Harvey A. Bookstein, an individual,

17  HAR-Airport, LLC, HAR-San Jacinto Partners, LLC, HAR-Bronson Diversified, LLC, and

18  HAR-SJS Partner, LCC's (the "Bookstein Defendants") filed this Motion for Withdrawal of

19  the Reference with Regard to Adversary Proceeding, asking this Court to interpret the

20  Supreme Court's recent decision in *Stern v. Marshal*, __ U.S. __, 131 S.Ct. 2594 (2011).

21  (Dkt. no. 1.)  The Bankruptcy Trustee, David A. Rosenberg, filed an opposition to the

22  Motion.  (Dkt. no. 4.)  The Bookstein Defendants filed a Reply.  (Dkt. no. 5.)  For the

23  reasons set forth below, the Bookstein Defendants' Motion is denied.

24  **I.      BACKGROUND**

25          On November 5, 2009, Hotels Nevada, LLC and Inns Nevada, LLC (collectively,

26  the "Debtors") filed separate petitions for relief under Chapter 11 of Title 11 of the United

27  States Code.  On June 29, 2010, the Bankruptcy Court entered an order converting the

28  cases to Chapter 7.  On November 4, 2011, David A. Rosenberg, Chapter 7 Trustee (the

1    "Trustee") for the jointly administered bankruptcy estate of the Debtors, initiated an

2    adversary proceeding by filing a Complaint against the Bookstein Defendants in the

3    Bankruptcy Court asserting various fraudulent transfer claims.  (*See* Dkt. no. 3.)  The

4    Trustee filed a First Amended Adversary Complaint ("FAC") on February 10, 2012.  (*Id.*)

5    The FAC asserts a number of fraudulent conveyance claims under federal and Nevada

6    state law arising out of allegedly fraudulent conveyances amounting to approximately

7    $26 million from the Debtors' alter ego, Louis Habash, to the Bookstein Defendants.

8         The Bookstein Defendants filed this Motion seeking a withdrawal of the reference,

9    citing their desire for a jury trial on the fraudulent transfer claims and relying on the

10   Supreme Court's decision in *Stern*.

11   **II.    LEGAL STANDARD**

12        Congress provided the authority for district courts to refer three types of

13   bankruptcy proceedings to bankruptcy courts in their own district: those (1) "arising

14   under title 11," (2) "arising in" a title 11 case, and (3) "related to a case under title 11."

15   28 U.S.C. § 157(a).  Congress permits bankruptcy judges to "hear and determine . . . all

16   core proceedings arising under title 11, or arising in a case under title 11."  28 U.S.C. §

17   157(b)(1).   In *Stern*, the Supreme Court held that final judgment on some core

18   proceedings may not, however, be constitutionally entered.  *Stern*, 131 S. Ct. 2594.

19        Section 157(d) provides for two ways that a reference may be withdrawn from a

20   bankruptcy proceeding, one mandatory and one permissive. The statute states:

21       The district court may withdraw, in whole or in part, any case or proceeding
         referred under this section, on its own motion or on timely motion of any
22       party, for cause shown. The district court shall, on timely motion of a party,
         so withdraw a proceeding if the court determines that resolution of the
23       proceeding requires consideration of both title 11 and other laws of the
         United States regulating organizations or activities affecting interstate
24       commerce.

25   28 U.S.C. § 157(d).  The Motion asks for permissive withdrawal.[1]

26

27

28   _____

        [1]Although the Bookstein Defendants make clear that they ask only for permissive
     withdrawal, *see* dkt. no. 1 at 9, they premise their withdrawal request on the bankruptcy
     *(fn. cont…)*

2

1    Section 157(d) allows permissive withdrawal "for cause shown," but does not

2    provide guidance as to what is necessary to show cause.   Accordingly, courts have

3    identified a variety of factors that may be considered, including: (1) efficient use of

4    judicial resources, (2) delay and costs to parties, (3) uniformity of bankruptcy

5    administration, (4) prevention of forum shopping, and other related factors.   *Security*

6    *Farms v. Int'l Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999,

7    1008 (9th Cir. 1997) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir.

8    1993)).   Other factors that could be relevant are whether the issues are core or non-core

9    proceedings, and the right to a jury trial.   *See, e.g.*, *In re Coe-Truman Technologies, Inc.*,

10   214 B.R. 183, 187 (N.D. Ill. 1997) ("As a non-core proceeding, the bankruptcy court's

11   decision will be subject to de novo review in this Court . . . .   We find, therefore, that it is

12   a more efficient use of judicial resources for this Court to decide this case in the first

13   instance.") (citation omitted); *Ellenberg v. Bouldin*, 125 B.R. 851, 856 (N.D. Ga. 1991)

14   (withdrawing reference in fraudulent transfer action because defendant had right to jury

15   trial).

16   **III.    DISCUSSION**

17       The gravamen of the Bookstein Defendants' argument is straightforward:

18   bankruptcy courts lack the constitutional authority to hear state law fraudulent

19   conveyance claims in light of their demand for jury trial and the Supreme Court's ruling in

20   *Stern*. In order to evaluate this argument and address the merits of the parties'

21   contentions, a summary of the Supreme Court's holding in *Stern* is required.

22   ///

23

24

25   *(…fn. cont.)*
     court's lack of jurisdiction to hear the fraudulent conveyance actions. The Court
26   understands this argument as *requiring*, not merely permitting, withdrawal, and so
     construes the Motion as seeking mandatory and, in the alternative, permissive
27   withdrawal.   *See In re Heller Ehrman LLP*, 464 B.R. 348, 351 (N.D. Cal. 2011) ("Clearly,
     good cause for withdrawal would be the absence of jurisdiction to adjudicate the action.
28   However, even if jurisdiction exists, a district court may withdraw the reference in its
     discretion.").

### A.    *Stern v. Marshall* and Its Impact on Fraudulent Conveyance Claims

*Stern* resolved a difficult constitutional question concerning the balance of judicial and legislative authority: under what circumstances, if any, can an Article I bankruptcy tribunal hear a state law claim brought in a bankruptcy proceeding?   The case concerned the bankruptcy filing of Vickie Lynn Marshall (more commonly known as Anna Nicole Smith and herein referred to as "Vickie").  *Stern*, 131 S. Ct. at 2601.  After the death of her wealthy husband, T. Howard Marshall II, Vickie filed for bankruptcy in California.  *Id.*  Marshall's son, E. Pierce Marshall ("Pierce"), filed a complaint in Vickie's bankruptcy proceeding alleging that Vickie had defamed him by claiming that he fraudulently gained access to his father's money.  *Id.*  Vickie counterclaimed for tortious interference with the gift she expected to receive from her late husband. *Id.* The bankruptcy judge granted Vickie judgment on her counterclaim, awarding her over $425 million in compensatory and punitive damages. *Id.* Pierce challenged the constitutionality of the award on the grounds that the bankruptcy court had no jurisdiction over the counterclaim since it was not a "core" proceeding.

The Supreme Court held that although Vickie's counterclaim was a core proceeding under 28 U.S.C. § 157(b)(2)(C), *Stern*, 131 S. Ct. at 2604, Article III prohibited the bankruptcy judge from entering a final judgment on the counterclaim, *id.* at 2620.  "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts."  *Id.* at 2609 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)).  Thus, while the bankruptcy court had the statutory authority to hear the counterclaim, it lacked the *constitutional* authority to do so.

The question before this Court is whether a fraudulent conveyance claim is similarly "the stuff of traditional actions at common law" such that Congress could not delegate its adjudication to the bankruptcy court.  Put differently, does the *Stern* ruling

1   apply to other "core" matters designated by statute.   "Whether *Stern* should be read to

2   hold that bankruptcy judges do not have constitutional authority to enter final judgments

3   in fraudulent conveyance actions turns on whether the court applies only the strict

4   dictate of the holding, or rather looks to the thrust of the reasoning the [Supreme] Court

5   used in coming to that holding."   *In re Heller Ehrman LLP*, 464 B.R. at 352.   Mindful that

6   precisely this issue is currently pending before the Ninth Circuit, *see In re Bellingham*

7   *Ins. Agency, Inc.*, No. 11-35162, (9th Cir. filed Feb. 18, 2011), the Court holds that the

8   bankruptcy court lacks authority to enter a final judgment on the fraudulent conveyance

9   claims, but that this Motion for Withdrawal of Reference nevertheless is premature.

10          There has been some debate in the trial courts as to whether bankruptcy courts

11   lack the constitutional authority to hear fraudulent conveyance claims, with some

12   concluding that their authority to do so remains even after *Stern.   See, e.g.*, *Kelly v.*

13   *JPMorgan Chase & Co.*, 464 B.R. 854, 862-63 (D. Minn. 2011) (suggesting *Stern* did not

14   deprive bankruptcy court of the ability to enter a final judgment on a fraudulent transfer

15   claim); *In re Appalachian Fuels, LLC*, 472 B.R. 731, 739-41 (E.D. Ky. 2012) (holding that

16   bankruptcy court has the authority to enter final orders and judgments on fraudulent

17   transfer claims); *In re Madoff*, 848 F. Supp. 2d 469, 483 n. 5 (S.D.N.Y. 2012) (same); *In*

18   *re Am. Bus. Fin. Servs.,* 457 B.R. 314, 319-20 (Bankr. D. Del. 2011) (same).   These

19   decisions understand *Stern* as having a very narrow effect, and use language from

20   earlier precedent describing fraudulent conveyance claims as a hallmark feature of

21   bankruptcy cases.

22          But reaching such a conclusion requires that the Court ignore the logic of *Stern* as

23   well as the Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33

24   (1989).   *Granfinanciera* held that defendants who had not submitted a claim against a

25   bankruptcy estate had a Seventh Amendment right to a jury trial when sued by the

26   trustee   in   bankruptcy   to   recover   an   allegedly   fraudulent   monetary   transfer,

27   notwithstanding Congress' designation of fraudulent conveyance actions as "core

28   proceedings" in 28 U.S.C. § 157(b)(2)(H).   *Id.* at 36.   The *Granfinanciera* Court

1  characterized such actions as involving "private rights" under the framework outlined in

2  *N. Pipeline Constr. Co.*, and held that the defendants' Seventh Amendment rights were

3  violated because the actions were not "integral to the restructuring of debtor-creditor

4  relations" and do not "arise as part of the process of allowance and disallowance of

5  claims." *Id.* at 60.  The Court stated that

6      matters from their nature subject to a suit at common law or in equity or
       admiralty lie at the protected core of Article III judicial power. . . .  There
7      can be little doubt that fraudulent conveyance actions by bankruptcy
       trustees — suits which . . . constitute no part of the proceedings in
8      bankruptcy but concern controversies arising out of it — are
       quintessentially suits at common law that more nearly resemble state-law
9      contract claims brought by a bankrupt corporation to augment the
       bankruptcy estate than they do creditors' hierarchically ordered claims to a
10     pro rata share of the bankruptcy res.

11  *Id.* at 56.  For that reason, a court deciding a fraudulent conveyance action exercises its

12  Article III judicial power, and the Seventh Amendment entitles a litigant to a jury trial on

13  such claims.  This is so because Congress lacks the power to strip parties of their

14  constitutional right to a jury trial if private rights are at issue.  *Id.* at 54-55.

15      While the *Stern* Court characterized its decision as "narrow," *Stern*, 131 S. Ct. at

16  2620, it stated that "Vickie's counterclaim — like the fraudulent conveyance claim at

17  issue in *Granfinanciera* — does not fall within any of the varied formulations of the public

18  rights exception in this Court's cases,"  *id.* at 2614.  The Court explicitly analogized

19  Vickie's counterclaim to the fraudulent conveyance action in *Granfinanciera*, stating that

20  "Pierce's claim for defamation in no way affects the nature of Vickie's counterclaim for

21  tortious interference as one at common law that simply attempts to augment the

22  bankruptcy estate — the *very type of claim* that we held in *Northern Pipeline* and

23  *Granfinanciera* must be decided by an Article III court."  *Id.* at 2616 (emphasis added).

24  As a result, a plain reading of the *Stern* decision in light of *Granfinanciera* reveals that

25  fraudulent conveyance claims must be decided by an Article III court, and must allow for

26  jury trials should the parties so request.

27      This Court's holding is consistent with those of other district courts who have

28  heard this issue.  *See In re Heller Ehrman LLP*, 464 B.R. at 354; *In re Canopy Financial,*

1    *Inc.*, 464 B.R. 770, 772-773 (N.D. Ill. 2011); *Adelphia Recovery Trust v. FLP Group, Inc.*,

2    No. 11 Civ. 6847, 2012 WL 264180, at *3-4 (S.D.N.Y. Jan. 30, 2012); *In re Teleservices*

3    *Group, Inc.*, 456 B.R. 318, 338 (Bankr. W.D. Mich. 2011). The Trustee's characterization

4    of such a potential ruling as "expanding" the Supreme Court's decision in *Stern* is thus

5    without merit.

6          **B.    Validity of Reports and Recommendations on Fraudulent Conveyance**

7          **Claims**

8          Having resolved whether the bankruptcy court has authority to enter final

9    judgment on a fraudulent conveyance claim, the Court nevertheless holds that Article III

10   permits a bankruptcy judge to issue proposed findings of fact and conclusions of law.

11   The bankruptcy code provides that a bankruptcy court may hear and "submit proposed

12   findings of fact and conclusions of law to the district court," subject to *de novo* review, in

13   a proceeding "that is not a core proceeding." 28 U.S.C. § 157(c)(1).   Since the code

14   categorizes fraudulent conveyance suits as "core" matters, *see* 28 U.S.C. § 157(b)(2)(H),

15   bankruptcy judges proceeded under the understanding that their authority to enter final

16   judgments on such claims was firmly rooted.  In light of *Stern*, however, the bankruptcy

17   code does not speak directly on the delegation of this responsibility for fraudulent

18   conveyance claims.

19          The question then arises whether district courts, in their broad grant of discretion

20   afforded by the bankruptcy code, *see* 28 U.S.C. §§ 157(a)-(b), can delegate to the

21   bankruptcy judge the task of providing a report and recommendation on "core" state law

22   claims that a district judge must enter final judgment on.  For a number of reasons, the

23   Court holds that Article III courts have this authority.  First, the bankruptcy code does

24   not, on its face, prohibit such a practice.  Second, Congress grants broad authority to

25   district courts to adjudicate non-core bankruptcy proceedings.  Since fraudulent

26   conveyance claims must be decided by a district court notwithstanding their status as

27   "core" proceedings, it stands to reason that district court authority over their adjudication

28   is at its strongest.  Third, the Supreme Court favored this approach:

1
2
3
4

> Pierce has not argued that the bankruptcy courts 'are barred from hearing all counterclaims' or proposing findings of fact and conclusions of law on the matters, but rather that it must be the district court that finally decides them. We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the statute; we agree with the United States that the question presented here is a 'narrow one.'

5   *Stern*, 131 S.Ct. at 2620.   As the court in *In re Heller Ehrman LLP* recognized, a

6   determination that bankruptcy judges do not have the authority to enter proposed

7   findings of fact and recommendations of law would subvert, in the language of *Stern*, the

8   division of labor crafted by the statute.  *See In re Heller Ehrman LLP*, 464 B.R. at 355-

9   56.   Fourth, there can be no doubt that fraudulent conveyance claims routinely arise in

10  the context of bankruptcy, and are often integrally tied to core proceedings.   Allowing

11  bankruptcy courts a "first shot" at hearing fraudulent conveyance claims preserves

12  judicial resources and leverages the competency of bankruptcy judges for use by a

13  district court.  *See Celotex v. Edwards*, 514 U.S. 300, 308 (1995) ("Congress intended to

14  grant comprehensive jurisdiction to the bankruptcy courts so that they might deal

15  efficiently and expeditiously with all matters connected with the bankruptcy estate. . . ."

16  (citation and quotation signals omitted)).

17       Moreover, other courts who have addressed this issue concluded that bankruptcy

18  judges have authority to provide reports and recommendations on fraudulent

19  conveyance actions.   *See In re Heller Ehrman LLP*, 464 B.R. at 355-57; *Adelphia*

20  *Recovery Trust*, 2012 WL 264180, at *5-7 ("'[T]he logical conclusion' (and the most

21  realistic one too) is that bankruptcy courts may issue proposed findings of facts and

22  conclusions of law in such fraudulent transfer actions."); *In re Canopy Fin., Inc.*, 464 B.R.

23  at 775 ("Given that bankruptcy courts may propose findings of fact and conclusions of

24  law in non-core proceedings, it is reasonable that they could employ the same procedure

25  in core proceedings."); *In re The Mortgage Store, Inc.*, 464 B.R. 421, 27 (D. Haw. 2011)

26  ("Congress, if faced with the prospect that bankruptcy courts could not enter final

27  judgments on certain 'core' proceedings, would have intended them to fall within 28

28  U.S.C. § 157(c)(1) granting bankruptcy courts authority to enter findings and

1    recommendations."); *Kelley*, 464 B.R. at 863 (agreeing that even if the bankruptcy judge

2    could not issue a final judgment "he has the unquestioned authority to conduct pretrial

3    proceedings and submit proposed findings of fact and conclusions of law to the district

4    court"); *In re Renascent, Inc.*, No. 12-58, 2012 WL 2050231, at *1 (D. Mon. May 31,

5    2012) (relying in part on *Blixseth v. Brown*, 470 B.R. 562, 571 (D. Mon. 2012)).

6         In summary, the Court rules that while a bankruptcy court may not enter a final

7    judgment on a fraudulent conveyance claim, district courts have the authority to delegate

8    to the bankruptcy court the responsibility for issuing proposed findings of fact and

9    conclusions of law.

10        **C.    Motion to Withdraw Reference**

11        Having discussed the state of the law post-*Stern*, the Court turns now to address

12   the Bookstein Defendants' Motion.  Their Motion argues that the bankruptcy court lacks

13   the authority to hear — not merely to enter final judgment in — the fraudulent transfer

14   claims, particularly since they intend to assert their right to a jury trial.  As a result, they

15   request an immediate withdrawal of the reference, and contend that such a request is

16   not premature given Local Rule 5011(b)'s requirement that a motion to withdraw the

17   reference of an adversary proceeding be filed on or before the date an answer, reply, or

18   motion is due.  Lastly, the Bookstein Defendants argue that the bankruptcy courts have

19   no jurisdiction even to enter proposed findings of fact and conclusions of law.

20        As noted above, the Court agrees with the Bookstein Defendants that bankruptcy

21   judges lack the constitutional authority to enter final judgments on fraudulent

22   conveyance claims.  However, their position that bankruptcy judges may not even hear

23   such claims, nor may enter proposed findings of fact and conclusions of law, is

24   untenable for the reasons outlined in Parts III.A-B.  A district court's *de novo* review of a

25   bankruptcy judge's findings on a fraudulent conveyance claim comports with — and is

26   favored by — the Supreme Court's ruling in *Stern*.  As a result, mandatory withdrawal of

27   fraudulent conveyance claims is not required.

28   ///

1    Turning to permissive withdrawal, the Court holds that factors outlined in *Security*

2   *Farms* favor denying the Motion.  While a jury trial must be conducted by this Court on

3   the fraudulent transfer claims, all pre-trial proceedings up to and through summary

4   judgment motions may be delegated to the bankruptcy court. *See In re*

5   *Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007) (holding that a jury demand does

6   not instantly require a bankruptcy court to withdraw jurisdiction, since " allowing the

7   bankruptcy court to retain jurisdiction over the action until trial is actually ready . . .

8   ensure[s] that our bankruptcy system is carried out."); *In re Petters Co.*, 440 B.R. 805,

9   808-10 (Bankr. D. Minn. 2010) (denying motion to transfer to district court as premature,

10   because demand for jury trial does not require transfer until after completion of summary

11   judgment proceedings); *In re Enron Corp.*, 318 B.R. 273, 275-76 (S.D.N.Y. 2004)

12   (denying withdrawal "at this early stage of the adversary proceeding" and noting that the

13   bankruptcy court's retention of the case "until the case is trial-ready would further the

14   interests of judicial economy").  Allowing an automatic withdrawal of the reference simply

15   because a party may seek a jury trial in the future runs the risk of a motion like this one

16   "[b]ecoming just another litigation tactic for parties eager to find a way out of bankruptcy

17   court," *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992), particularly in the absence of

18   any showing of prejudice to the Trustee.  Judicial economy militates in favor of allowing

19   the bankruptcy court to proceed with pretrial matters on fraudulent conveyance claims

20   precisely because the nature of those claims and their status as "core" matters makes

21   the bankruptcy court a more competent venue for pretrial matters.  For these reasons,

22   the Court holds that permissive withdrawal is not required at this stage of the litigation.

23   **IV.    CONCLUSION**

24    Accordingly, IT IS HEREBY ORDERED that Defendants Harvey A. Bookstein, a

25   California Accountancy Corporation, Harvey A. Bookstein, an individual, HAR-Airport,

26   LLC, HAR-San Jacinto Partners, LLC, HAR-Bronson Diversified, LLC, and HAR-SJS

27   Partner, LCC's Motion for Withdrawal of the Reference with Regard to Adversary

28   Proceeding (dkt. no.1) is DENIED.

1    The bankruptcy court may present reports and recommendations to the district

2  court on dispositive issues and schedule trial in the district court should the Bookstein

3  Defendants demand a jury trial in the adversary proceeding.

4

5    ENTERED THIS  21st day of September 2012.

6

7    _____
     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28