UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAVID A. ROSENBERG, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>HARVEY A. BOOKSTEIN, Accountancy Corporation, et. al.,<br><br>Defendants. | Case No. 2:12-cv-00627-MMD-RJJ<br><br>ORDER<br><br>(Defs.' Motion for Withdrawal of the Reference with Regard to Adversary Proceeding – dkt. no. 1) |

Before the Court is a case of first impression for this District. Defendants Harvey A. Bookstein, a California Accountancy Corporation, Harvey A. Bookstein, an individual, HAR-Airport, LLC, HAR-San Jacinto Partners, LLC, HAR-Bronson Diversified, LLC, and HAR-SJS Partner, LCC's (the "Bookstein Defendants") filed this Motion for Withdrawal of the Reference with Regard to Adversary Proceeding, asking this Court to interpret the Supreme Court's recent decision in *Stern v. Marshal*, __ U.S. __, 131 S.Ct. 2594 (2011). (Dkt. no. 1.) The Bankruptcy Trustee, David A. Rosenberg, filed an opposition to the Motion. (Dkt. no. 4.) The Bookstein Defendants filed a Reply. (Dkt. no. 5.) For the reasons set forth below, the Bookstein Defendants' Motion is denied.

**I.    BACKGROUND**

On November 5, 2009, Hotels Nevada, LLC and Inns Nevada, LLC (collectively, the "Debtors") filed separate petitions for relief under Chapter 11 of Title 11 of the United States Code. On June 29, 2010, the Bankruptcy Court entered an order converting the cases to Chapter 7. On November 4, 2011, David A. Rosenberg, Chapter 7 Trustee (the

"Trustee") for the jointly administered bankruptcy estate of the Debtors, initiated an adversary proceeding by filing a Complaint against the Bookstein Defendants in the Bankruptcy Court asserting various fraudulent transfer claims. (*See* Dkt. no. 3.) The Trustee filed a First Amended Adversary Complaint ("FAC") on February 10, 2012. (*Id.*) The FAC asserts a number of fraudulent conveyance claims under federal and Nevada state law arising out of allegedly fraudulent conveyances amounting to approximately $26 million from the Debtors' alter ego, Louis Habash, to the Bookstein Defendants.

The Bookstein Defendants filed this Motion seeking a withdrawal of the reference, citing their desire for a jury trial on the fraudulent transfer claims and relying on the Supreme Court's decision in *Stern*.

## II.    LEGAL STANDARD

Congress provided the authority for district courts to refer three types of bankruptcy proceedings to bankruptcy courts in their own district: those (1) "arising under title 11," (2) "arising in" a title 11 case, and (3) "related to a case under title 11." 28 U.S.C. § 157(a). Congress permits bankruptcy judges to "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). In *Stern*, the Supreme Court held that final judgment on some core proceedings may not, however, be constitutionally entered. *Stern*, 131 S. Ct. 2594.

Section 157(d) provides for two ways that a reference may be withdrawn from a bankruptcy proceeding, one mandatory and one permissive. The statute states:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).  The Motion asks for permissive withdrawal.[1]

---

[1] Although the Bookstein Defendants make clear that they ask only for permissive withdrawal, *see* dkt. no. 1 at 9, they premise their withdrawal request on the bankruptcy
*(fn. cont…)*

Section 157(d) allows permissive withdrawal "for cause shown," but does not provide guidance as to what is necessary to show cause. Accordingly, courts have identified a variety of factors that may be considered, including: (1) efficient use of judicial resources, (2) delay and costs to parties, (3) uniformity of bankruptcy administration, (4) prevention of forum shopping, and other related factors. *Security Farms v. Int'l Broth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir. 1993)). Other factors that could be relevant are whether the issues are core or non-core proceedings, and the right to a jury trial. *See, e.g.*, *In re Coe-Truman Technologies, Inc.*, 214 B.R. 183, 187 (N.D. Ill. 1997) ("As a non-core proceeding, the bankruptcy court's decision will be subject to de novo review in this Court . . . . We find, therefore, that it is a more efficient use of judicial resources for this Court to decide this case in the first instance.") (citation omitted); *Ellenberg v. Bouldin*, 125 B.R. 851, 856 (N.D. Ga. 1991) (withdrawing reference in fraudulent transfer action because defendant had right to jury trial).

**III.  DISCUSSION**

The gravamen of the Bookstein Defendants' argument is straightforward: bankruptcy courts lack the constitutional authority to hear state law fraudulent conveyance claims in light of their demand for jury trial and the Supreme Court's ruling in *Stern*. In order to evaluate this argument and address the merits of the parties' contentions, a summary of the Supreme Court's holding in *Stern* is required.

///

---

*(…fn. cont.)*
court's lack of jurisdiction to hear the fraudulent conveyance actions. The Court understands this argument as *requiring*, not merely permitting, withdrawal, and so construes the Motion as seeking mandatory and, in the alternative, permissive withdrawal. *See In re Heller Ehrman LLP*, 464 B.R. 348, 351 (N.D. Cal. 2011) ("Clearly, good cause for withdrawal would be the absence of jurisdiction to adjudicate the action. However, even if jurisdiction exists, a district court may withdraw the reference in its discretion.").

3

A.  ***Stern v. Marshall* and Its Impact on Fraudulent Conveyance Claims**

*Stern* resolved a difficult constitutional question concerning the balance of judicial and legislative authority: under what circumstances, if any, can an Article I bankruptcy tribunal hear a state law claim brought in a bankruptcy proceeding? The case concerned the bankruptcy filing of Vickie Lynn Marshall (more commonly known as Anna Nicole Smith and herein referred to as "Vickie"). *Stern*, 131 S. Ct. at 2601. After the death of her wealthy husband, T. Howard Marshall II, Vickie filed for bankruptcy in California. *Id.* Marshall's son, E. Pierce Marshall ("Pierce"), filed a complaint in Vickie's bankruptcy proceeding alleging that Vickie had defamed him by claiming that he fraudulently gained access to his father's money. *Id.* Vickie counterclaimed for tortious interference with the gift she expected to receive from her late husband. *Id.* The bankruptcy judge granted Vickie judgment on her counterclaim, awarding her over $425 million in compensatory and punitive damages. *Id.* Pierce challenged the constitutionality of the award on the grounds that the bankruptcy court had no jurisdiction over the counterclaim since it was not a "core" proceeding.

The Supreme Court held that although Vickie's counterclaim was a core proceeding under 28 U.S.C. § 157(b)(2)(C), *Stern*, 131 S. Ct. at 2604, Article III prohibited the bankruptcy judge from entering a final judgment on the counterclaim, *id.* at 2620. "When a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* at 2609 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)). Thus, while the bankruptcy court had the statutory authority to hear the counterclaim, it lacked the *constitutional* authority to do so.

The question before this Court is whether a fraudulent conveyance claim is similarly "the stuff of traditional actions at common law" such that Congress could not delegate its adjudication to the bankruptcy court. Put differently, does the *Stern* ruling

4

apply to other "core" matters designated by statute. "Whether *Stern* should be read to hold that bankruptcy judges do not have constitutional authority to enter final judgments in fraudulent conveyance actions turns on whether the court applies only the strict dictate of the holding, or rather looks to the thrust of the reasoning the [Supreme] Court used in coming to that holding." *In re Heller Ehrman LLP*, 464 B.R. at 352. Mindful that precisely this issue is currently pending before the Ninth Circuit, *see In re Bellingham Ins. Agency, Inc.*, No. 11-35162, (9th Cir. filed Feb. 18, 2011), the Court holds that the bankruptcy court lacks authority to enter a final judgment on the fraudulent conveyance claims, but that this Motion for Withdrawal of Reference nevertheless is premature.

There has been some debate in the trial courts as to whether bankruptcy courts lack the constitutional authority to hear fraudulent conveyance claims, with some concluding that their authority to do so remains even after *Stern*. *See, e.g.*, *Kelly v. JPMorgan Chase & Co.*, 464 B.R. 854, 862-63 (D. Minn. 2011) (suggesting *Stern* did not deprive bankruptcy court of the ability to enter a final judgment on a fraudulent transfer claim); *In re Appalachian Fuels, LLC*, 472 B.R. 731, 739-41 (E.D. Ky. 2012) (holding that bankruptcy court has the authority to enter final orders and judgments on fraudulent transfer claims); *In re Madoff*, 848 F. Supp. 2d 469, 483 n. 5 (S.D.N.Y. 2012) (same); *In re Am. Bus. Fin. Servs.,* 457 B.R. 314, 319-20 (Bankr. D. Del. 2011) (same). These decisions understand *Stern* as having a very narrow effect, and use language from earlier precedent describing fraudulent conveyance claims as a hallmark feature of bankruptcy cases.

But reaching such a conclusion requires that the Court ignore the logic of *Stern* as well as the Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). *Granfinanciera* held that defendants who had not submitted a claim against a bankruptcy estate had a Seventh Amendment right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer, notwithstanding Congress' designation of fraudulent conveyance actions as "core proceedings" in 28 U.S.C. § 157(b)(2)(H). *Id.* at 36. The *Granfinanciera* Court

characterized such actions as involving "private rights" under the framework outlined in *N. Pipeline Constr. Co.*, and held that the defendants' Seventh Amendment rights were violated because the actions were not "integral to the restructuring of debtor-creditor relations" and do not "arise as part of the process of allowance and disallowance of claims." *Id.* at 60. The Court stated that

> matters from their nature subject to a suit at common law or in equity or admiralty lie at the protected core of Article III judicial power. . . . There can be little doubt that fraudulent conveyance actions by bankruptcy trustees — suits which . . . constitute no part of the proceedings in bankruptcy but concern controversies arising out of it — are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.

*Id.* at 56. For that reason, a court deciding a fraudulent conveyance action exercises its Article III judicial power, and the Seventh Amendment entitles a litigant to a jury trial on such claims. This is so because Congress lacks the power to strip parties of their constitutional right to a jury trial if private rights are at issue. *Id.* at 54-55.

While the *Stern* Court characterized its decision as "narrow," *Stern*, 131 S. Ct. at 2620, it stated that "Vickie's counterclaim — like the fraudulent conveyance claim at issue in *Granfinanciera* — does not fall within any of the varied formulations of the public rights exception in this Court's cases," *id.* at 2614. The Court explicitly analogized Vickie's counterclaim to the fraudulent conveyance action in *Granfinanciera*, stating that "Pierce's claim for defamation in no way affects the nature of Vickie's counterclaim for tortious interference as one at common law that simply attempts to augment the bankruptcy estate — the *very type of claim* that we held in *Northern Pipeline* and *Granfinanciera* must be decided by an Article III court." *Id.* at 2616 (emphasis added). As a result, a plain reading of the *Stern* decision in light of *Granfinanciera* reveals that fraudulent conveyance claims must be decided by an Article III court, and must allow for jury trials should the parties so request.

This Court's holding is consistent with those of other district courts who have heard this issue. *See In re Heller Ehrman LLP*, 464 B.R. at 354; *In re Canopy Financial,*

6

*Inc.*, 464 B.R. 770, 772-773 (N.D. Ill. 2011); *Adelphia Recovery Trust v. FLP Group, Inc.*, No. 11 Civ. 6847, 2012 WL 264180, at *3-4 (S.D.N.Y. Jan. 30, 2012); *In re Teleservices Group, Inc.*, 456 B.R. 318, 338 (Bankr. W.D. Mich. 2011). The Trustee's characterization of such a potential ruling as "expanding" the Supreme Court's decision in *Stern* is thus without merit.

### B. Validity of Reports and Recommendations on Fraudulent Conveyance Claims

Having resolved whether the bankruptcy court has authority to enter final judgment on a fraudulent conveyance claim, the Court nevertheless holds that Article III permits a bankruptcy judge to issue proposed findings of fact and conclusions of law. The bankruptcy code provides that a bankruptcy court may hear and "submit proposed findings of fact and conclusions of law to the district court," subject to *de novo* review, in a proceeding "that is not a core proceeding." 28 U.S.C. § 157(c)(1). Since the code categorizes fraudulent conveyance suits as "core" matters, *see* 28 U.S.C. § 157(b)(2)(H), bankruptcy judges proceeded under the understanding that their authority to enter final judgments on such claims was firmly rooted. In light of *Stern*, however, the bankruptcy code does not speak directly on the delegation of this responsibility for fraudulent conveyance claims.

The question then arises whether district courts, in their broad grant of discretion afforded by the bankruptcy code, *see* 28 U.S.C. §§ 157(a)-(b), can delegate to the bankruptcy judge the task of providing a report and recommendation on "core" state law claims that a district judge must enter final judgment on. For a number of reasons, the Court holds that Article III courts have this authority. First, the bankruptcy code does not, on its face, prohibit such a practice. Second, Congress grants broad authority to district courts to adjudicate non-core bankruptcy proceedings. Since fraudulent conveyance claims must be decided by a district court notwithstanding their status as "core" proceedings, it stands to reason that district court authority over their adjudication is at its strongest. Third, the Supreme Court favored this approach:

> Pierce has not argued that the bankruptcy courts 'are barred from hearing all counterclaims' or proposing findings of fact and conclusions of law on the matters, but rather that it must be the district court that finally decides them. We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the statute; we agree with the United States that the question presented here is a 'narrow one.'

*Stern*, 131 S.Ct. at 2620. As the court in *In re Heller Ehrman LLP* recognized, a determination that bankruptcy judges do not have the authority to enter proposed findings of fact and recommendations of law would subvert, in the language of *Stern*, the division of labor crafted by the statute. *See In re Heller Ehrman LLP*, 464 B.R. at 355-56. Fourth, there can be no doubt that fraudulent conveyance claims routinely arise in the context of bankruptcy, and are often integrally tied to core proceedings. Allowing bankruptcy courts a "first shot" at hearing fraudulent conveyance claims preserves judicial resources and leverages the competency of bankruptcy judges for use by a district court. *See Celotex v. Edwards*, 514 U.S. 300, 308 (1995) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. . . ." (citation and quotation signals omitted)).

Moreover, other courts who have addressed this issue concluded that bankruptcy judges have authority to provide reports and recommendations on fraudulent conveyance actions. *See In re Heller Ehrman LLP*, 464 B.R. at 355-57; *Adelphia Recovery Trust*, 2012 WL 264180, at *5-7 ("'[T]he logical conclusion' (and the most realistic one too) is that bankruptcy courts may issue proposed findings of facts and conclusions of law in such fraudulent transfer actions."); *In re Canopy Fin., Inc.*, 464 B.R. at 775 ("Given that bankruptcy courts may propose findings of fact and conclusions of law in non-core proceedings, it is reasonable that they could employ the same procedure in core proceedings."); *In re The Mortgage Store, Inc.*, 464 B.R. 421, 27 (D. Haw. 2011) ("Congress, if faced with the prospect that bankruptcy courts could not enter final judgments on certain 'core' proceedings, would have intended them to fall within 28 U.S.C. § 157(c)(1) granting bankruptcy courts authority to enter findings and

recommendations."); *Kelley*, 464 B.R. at 863 (agreeing that even if the bankruptcy judge could not issue a final judgment "he has the unquestioned authority to conduct pretrial proceedings and submit proposed findings of fact and conclusions of law to the district court"); *In re Renascent, Inc.*, No. 12-58, 2012 WL 2050231, at *1 (D. Mon. May 31, 2012) (relying in part on *Blixseth v. Brown*, 470 B.R. 562, 571 (D. Mon. 2012)).

In summary, the Court rules that while a bankruptcy court may not enter a final judgment on a fraudulent conveyance claim, district courts have the authority to delegate to the bankruptcy court the responsibility for issuing proposed findings of fact and conclusions of law.

### C. Motion to Withdraw Reference

Having discussed the state of the law post-*Stern*, the Court turns now to address the Bookstein Defendants' Motion. Their Motion argues that the bankruptcy court lacks the authority to hear — not merely to enter final judgment in — the fraudulent transfer claims, particularly since they intend to assert their right to a jury trial. As a result, they request an immediate withdrawal of the reference, and contend that such a request is not premature given Local Rule 5011(b)'s requirement that a motion to withdraw the reference of an adversary proceeding be filed on or before the date an answer, reply, or motion is due. Lastly, the Bookstein Defendants argue that the bankruptcy courts have no jurisdiction even to enter proposed findings of fact and conclusions of law.

As noted above, the Court agrees with the Bookstein Defendants that bankruptcy judges lack the constitutional authority to enter final judgments on fraudulent conveyance claims. However, their position that bankruptcy judges may not even hear such claims, nor may enter proposed findings of fact and conclusions of law, is untenable for the reasons outlined in Parts III.A-B. A district court's *de novo* review of a bankruptcy judge's findings on a fraudulent conveyance claim comports with — and is favored by — the Supreme Court's ruling in *Stern*. As a result, mandatory withdrawal of fraudulent conveyance claims is not required.

///

1    Turning to permissive withdrawal, the Court holds that factors outlined in *Security Farms* favor denying the Motion. While a jury trial must be conducted by this Court on the fraudulent transfer claims, all pre-trial proceedings up to and through summary judgment motions may be delegated to the bankruptcy court. *See In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007) (holding that a jury demand does not instantly require a bankruptcy court to withdraw jurisdiction, since " allowing the bankruptcy court to retain jurisdiction over the action until trial is actually ready . . . ensure[s] that our bankruptcy system is carried out."); *In re Petters Co.*, 440 B.R. 805, 808-10 (Bankr. D. Minn. 2010) (denying motion to transfer to district court as premature, because demand for jury trial does not require transfer until after completion of summary judgment proceedings); *In re Enron Corp.*, 318 B.R. 273, 275-76 (S.D.N.Y. 2004) (denying withdrawal "at this early stage of the adversary proceeding" and noting that the bankruptcy court's retention of the case "until the case is trial-ready would further the interests of judicial economy"). Allowing an automatic withdrawal of the reference simply because a party may seek a jury trial in the future runs the risk of a motion like this one "[b]ecoming just another litigation tactic for parties eager to find a way out of bankruptcy court," *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992), particularly in the absence of any showing of prejudice to the Trustee. Judicial economy militates in favor of allowing the bankruptcy court to proceed with pretrial matters on fraudulent conveyance claims precisely because the nature of those claims and their status as "core" matters makes the bankruptcy court a more competent venue for pretrial matters. For these reasons, the Court holds that permissive withdrawal is not required at this stage of the litigation.

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants Harvey A. Bookstein, a California Accountancy Corporation, Harvey A. Bookstein, an individual, HAR-Airport, LLC, HAR-San Jacinto Partners, LLC, HAR-Bronson Diversified, LLC, and HAR-SJS Partner, LCC's Motion for Withdrawal of the Reference with Regard to Adversary Proceeding (dkt. no.1) is DENIED.

The bankruptcy court may present reports and recommendations to the district court on dispositive issues and schedule trial in the district court should the Bookstein Defendants demand a jury trial in the adversary proceeding.

ENTERED THIS 21st day of September 2012.

_____
UNITED STATES DISTRICT JUDGE